UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

REBECCA S.,

                Plaintiff,

   v.                                            5:23-CV-00628
                                                       (MAD/DJS)

MARTIN O'MALLEY
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

**APPEARANCES:**                              **OF COUNSEL:**

OLINSKY LAW GROUP               HOWARD D. OLINKSY, ESQ.
Attorney for Plaintiff
250 South Clinton Street, Suite 210
Syracuse, New York 13202

U.S. SOCIAL SECURITY ADMIN.      KRISTINA D. COHN, ESQ.
OFFICE OF THE GENERAL COUNSEL
Attorney for Defendant
6401 Security Boulevard
Baltimore, Maryland 21235

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER[1]

     Plaintiff brought this action pursuant to 42 U.S.C. § 405(g), seeking review of a decision by the Commissioner of Social Security that Plaintiff was not disabled. Dkt. No. 1. Currently before the Court are Plaintiff's Opening Brief, Defendant's Brief in

---

[1] This matter was referred to the undersigned for a report-recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Opposition to Plaintiff's Brief, and Plaintiff's Reply. Dkt. Nos. 12, 14, & 15. For the reasons that follow, it is recommended that Plaintiff's Motion be granted and Defendant's Motion be denied.

## I.  BACKGROUND

### A.  Factual Background

Plaintiff was born in 1964, has past work experience as a nurse, and reported finishing three years of college. Tr. at pp. 69, 287. Plaintiff alleges disability stemming from an injury sustained from a slip and fall on ice in February of 2019. Dkt. No. 8 at pp. 70, 74. On September 8, 2020, Plaintiff applied for disability and disability insurance benefits, alleging disability beginning February 19, 2020. Tr. at p. 216. Plaintiff's claim was initially denied on April 29, 2021, and again denied upon reconsideration on September 15, 2021. Tr. at p. 115. Plaintiff timely filed a written request for a hearing with an Administrative Law Judge ("ALJ") on September 17, 2021, and subsequently appeared and testified at an online video hearing before ALJ Bruce Fein on July 28, 2022. Tr. at pp. 39, 68, 123. On October 4, 2022, ALJ Fein issued a written decision finding that Plaintiff was not disabled under the Social Security Act. Tr. at pp. 14–30. On May 3, 2023, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. at pp. 1–4.

## B. The ALJ's Decision

In his decision, the ALJ first found that the Plaintiff met the insured status requirements of the Social Security Act through December 31, 2025. Tr. at p. 16. Second, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 19, 2020, the alleged onset date of injury. Tr. at p. 17. Third, the ALJ determined that Plaintiff had the following severe impairments: lumbar degenerative disc disease, left lumbar radiculopathy, foraminal left lumbar disc herniation at L5-S1 and ankylosing spondylitis. *Id.* Fourth, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments found in 20 C.F.R. § 404, Subpart P, App 1. *Id.* Fifth, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), "except the claimant can perform all postural limitations on an occasional basis." Tr. at p. 19. The ALJ noted the following limitations on Plaintiff's RFC:

> The claimant should have allowance to alternate sitting or standing positions at thirty-minute intervals throughout the day. She should avoid concentrated exposures to hazards, machinery, and pulmonary irritants such as fumes, odors, gases, dust, and poorly ventilated areas.

*Id.*

Next, the ALJ found that Plaintiff was unable to perform any past relevant work due to her RFC, Plaintiff was an "individual of advanced age" on the alleged disability onset date, and she had at least a high school education. Tr. at p. 27–28. Plaintiff had

acquired work skills from past relevant work as a registered nurse, which a vocational expert testified was skilled work. Tr. at p. 28. Consistent with her identified skill level, the ALJ determined that Plaintiff's transferrable skills included patient assessment, patient education, administration of medications, monitoring of vital signs, clinical documentation, and injection administration. Tr. at p. 29. Based on Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff acquired work skills from past relevant work that are transferable to other occupations with "jobs existing in significant numbers in the national economy," including the job of nurse, office (DOT code 075.374-014). Tr. at p. 29. Finally, the ALJ found that Plaintiff was not disabled as defined in the Social Security Act. Tr. at p. 30.

## II.  RELEVANT LEGAL STANDARDS

### A.  Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Hum. Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).

### B.  Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v. Yuckert*, 482 U.S. 137, 141–42 (1987).  The five-step process asks:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson*, 540 U.S. 20, 24 (2003).

### III. ANALYSIS

Plaintiff contends that ALJ Fein erred by finding that she is not disabled and consequently urges remand. Pl.'s Br. at p. 20. Plaintiff first alleges that ALJ Fein improperly rejected medical opinion evidence, and instead relied on his lay knowledge to interpret raw medical data for his RFC finding. Pl.'s Br. at p. 11–14. Plaintiff then claims that ALJ Fein failed to properly apply the supportability and consistency factors when assessing medical opinion evidence. Pl.'s Br. at pp. 15–20. In response, Defendant asserts that ALJ Fein properly evaluated the record, and that his analysis and decision were supported by substantial evidence that the Plaintiff is not disabled. Def.'s Br. at 5–10.

#### 1. Lay Knowledge Claim

Contrary to Plaintiff's assertions, ALJ Fein did not substitute his lay knowledge for acceptable medical opinions when drawing his RFC conclusion. ALJs may not "interpret 'raw medical data' to discount [] doctors' opinions," *Sharon R. v Kijakazi*, 2021 U.S. Dist. LEXIS 164525, at *23 (N.D.N.Y. Aug. 31, 2021), and must instead "base [their] conclusion[s] on *some* medical opinion or otherwise articulate the overwhelmingly compelling reasons for not doing so." *Riccobono v. Saul*, 796 F. App'x 49, 50 (2d Cir. 2020). A medical opinion that directly mirrors an RFC "is not required

when 'the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity.'" *Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109–110 (2d Cir. 2020) (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013)). A more current medical opinion does not render a prior medical opinion "*per se* unreliable, as an ALJ has the duty to review the record as a whole, including medical opinions and any other relevant evidence received." *Andrews v. Berryhill*, 2018 U.S. Dist. LEXIS 75920, at *7 (W.D.N.Y. May 4, 2018). At the same time, "the absence of a medical opinion supporting the ALJ's findings [does not] necessarily create[] a gap in the record." *Matthew D.P. v. Comm'r of Soc. Sec.*, 2022 U.S. Dist. LEXIS 53486, at *18 (N.D.N.Y. Mar. 24, 2022).

Plaintiff's lay knowledge argument hinges on two underlying notions. First, Plaintiff contends that ALJ Fein based his RFC determination on medical opinions that several doctors formed while they were not privy to later-attained MRI results and orthopedic assessments. Second, Plaintiff posits that ALJ Fein could not have reached his RFC determination other than by relying on his lay knowledge. Pl.'s Br. at p. 12. Plaintiff reasons that ALJ Fein created a void of medical opinions by dismissing Dr. Warren Wulff, Dr. Aaron Bianco, Dr. Mike Sun, and Physician Assistant ("PA") Lynn McIlvain's medical opinions, and by relying upon other medical opinions formed prior to the existence of the MRI results and orthopedic assessments. *Id.* Because of this void, Plaintiff contends ALJ Fein improperly resorted to interpreting the MRI results and orthopedic assessments using his lay knowledge. *Id.* To the contrary, ALJ Fein

7

clearly based his RFC determination on multiple medical opinions and at no point interpreted these MRI results and orthopedic assessments based on his own lay knowledge. Tr. at pp. 23–27.

Plaintiff alleges that because ALJ Fein dismissed Dr. Wulff, Dr. Bianco, Dr. Sun, and PA McIlvain's medical opinions that he necessarily inserted his own lay opinion in their place. Pl.'s Br. at pp. 12–13. Instead, ALJ Fein explicitly described several medical professionals' opinions, summarized their corresponding objective clinical findings, and then cited to the specific medical records that supported these opinions. Tr. at pp. 25–27. First, ALJ Fein credited Dr. Elke Lorenson's opinion and noted that she personally examined Plaintiff and interpreted Plaintiff's thoracic spine and cervical spine x-rays on December 14, 2020. Tr. at p. 25. ALJ Fein noted that Dr. Lorenson "determined the claimant had no gross limitations for sitting, standing, walking, and use of her hands. She had mild limitations for bending, lifting, and carrying. She should avoid known respiratory irritants." *Id.* ALJ Fein then reviewed Drs. Roger Levine and Todd Deneen's opinions and relied upon their evaluations of Plaintiff's mental health and Dr. Deneen's progress notes from years of treating Plaintiff. Tr. at pp. 25–26. The ALJ highlighted Dr. Deneen's determination, that "claimant has only mild limitation in her ability to regulate emotion, control behavior, and maintain well-being," plus noted that Dr. Levine signed a mental medical source statement attesting to the fact that Plaintiff had "no psychiatric limitations." *Id.* ALJ Fein did not attempt to read the x-rays that Dr. Lorenson referred to in her visit summary, nor did ALJ Fein attempt to

decipher Plaintiff's mental aptitude from Drs. Deneen and Levine's progress notes and evaluations. Tr. at p. 25–27. ALJ Fein invoked each of these medical professionals' opinions to contextualize objective clinical data and never once inserted his lay knowledge. *Id.*

Plaintiff incorrectly asserts that ALJ Fein "declined to adopt the RFC determinations issued by the State agency physicians who reviewed the consultive examination by Dr. Lorenson." Pl.'s Br. at p. 13. In fact, ALJ Fein noted that Drs. A Periakaruppan and S. Padmaraju (collectively, "state medical analysts") reviewed those medical records and concurred with Dr. Lorenson's determinations as to Plaintiff's exertional limitations on April 28, 2021, and August 17, 2021, respectively. Tr. at pp. 25–27. ALJ Fein agreed that the state medical analysts did not examine the claimant or "review[] the complete record of medical evidence." Tr. at p. 26. Neither doctor accounted for the Plaintiff's environmental limitations as Dr. Lorenson did, and Dr. Lorenson and the state medical analysts did not view the later-dated MRI results or orthopedic assessments. *Id.* ALJ Fein accorded the state medical analysts due weight given this fact, noting that their opinions were "less persuasive," but the ALJ did not, *sua sponte*, attempt to read the raw medical data that led to the state medical analysts' assessment of Plaintiff's exertional limitations. Tr. at pp. 25–27. Rather, ALJ Fein properly deferred to the state medical analysts' interpretations of Plaintiff's exertional limitations. *Id.* The mere fact that Dr. Lorenson and the state medical analysts' opinions

did not account for then-nonexistent medical data does not necessitate a finding that ALJ Fein relied upon his lay knowledge to interpret that data.

Plaintiff cites *Riccobono* to assert that "the ALJ must base his conclusion on *some* medical opinion," while simultaneously overlooking that the ALJ fully accounted for Drs. Lorenson, Deneen, Levine, Periakaruppan, and Padmaraju's medical opinions. Pl.'s Br. at p. 12; Tr. at p. 27.  Plaintiff relies on the fact that none of the medical professionals whose opinions informed the ALJ's RFC determination considered the later-attained MRI results and orthopedic assessments.  Pl.'s Br. at pp. 11–14.  In his decision, ALJ Fein only discussed this later-attained medical data in connection with Dr. Aaron Bianco, Dr. Mike Sun, and PA Lynn McIlvain's interpretation of that data. Tr. at pp. 23–27.  At no point in ALJ Fein's analysis did he strive to read or determine the data's meaning himself, nor did he supplant these medical professionals' expertise with his own interpretation of the data.  *Id.*  Instead, as was his prerogative, ALJ Fein relied upon other medical professionals' opinions within the complete record of medical evidence.  Tr. at pp. 25–27; *Janet V. v. Comm'r of Soc. Sec.*, 2020 U.S. Dist. LEXIS 80932, at *10 (N.D.N.Y. May 7, 2020) ("[I]t is the prerogative of the administrative law judge to weigh medical opinions and evidence in the record.").  Here, ALJ Fein afforded more weight to older medical opinions that did not incorporate then-nonexistent data. Tr. at p. 27.  Relying on these older opinions while rejecting newer medical opinions that *did* incorporate newer medical data did not, as Plaintiff asserts, create a void in the record of medical opinions such that ALJ Fein sought to inject his lay knowledge to

10

reach an RFC. To the contrary, ALJ Fein deferred to the medical opinions and objective clinical findings that he deemed persuasive. Tr. at p. 27. As, such, ALJ Fein did not err in this respect.

### 2. *Supportability and Consistency*

Plaintiff argues that ALJ Fein failed to properly analyze the supportability and consistency of Dr. Aaron Bianco's medical opinion. Pl.'s Br. at p. 15. When determining the persuasiveness of a medical opinion, an ALJ must consider, among other factors, "[(1)] the amount of medical evidence supporting the opinion [and] [(2)] the consistency of the opinion with the remaining medical evidence." *Schillo v. Kijakazi*, 31 F.4th 64, 75 (2d Cir. 2022) (internal quotation marks omitted). In their analysis, the ALJ "must *explicitly* apply the[se] factors." *Id.*; *see also Dana Marie M. v. Comm'r of Soc. Sec.*, 2022 U.S. Dist. LEXIS 113522, at *18–19 (N.D.N.Y. June 27, 2022) ("An ALJ is required to explain his or her consideration of these factors and is not entitled to generally assert that an opinion is 'consistent with' or 'supported by' the record, without further elaboration."). However, an ALJ need not "reconcile explicitly every conflicting shred of medical testimony." *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983).

Specifically, "[t]o analyze supportability, the ALJ must conduct 'an inquiry confined to the medical source's own records that focuses on how well a medical source supported and explained their opinion.'" *Ayala v. Kijakazi*, 620 F. Supp. 3d 6, 30 (S.D.N.Y. 2022) (quoting *Vellone v. Saul*, 2021 U.S. Dist. LEXIS 20030, at *17

11

(S.D.N.Y. Jan. 29, 2021)) (finding an ALJ's statement, that a doctor's opinion was supported by record review, was an insufficient explanation of the supportability factor). An ALJ's "conclusory statements offer no insight into 'how well [a doctor] supported and explained their opinion.'" *Id.* at 31. To analyze consistency, the ALJ must conduct "an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Vellone v. Saul*, 2021 U.S. Dist. LEXIS 20030, at *17 (S.D.N.Y. Jan. 29, 2021); *see also Jennifer G. v. Comm'r of Soc. Sec.*, 2023 U. S. Dist. LEXIS 218445, at *26 (N.D.N.Y. Sept. 6, 2023) (remanding where the ALJ failed to "meaningfully discuss" the consistency of the medical opinions). Failure to properly assess either factor is procedural error subject to harmless error analysis. *See, e.g.*, *Schillo v. Saul*, 31 F.4th 64, 75 (2d Cir. 2022).

In arguing that the ALJ's supportability analysis was insufficient, Plaintiff regards one paragraph as the only part of the decision that "could be construed as addressing the factor of supportability." Pl.'s Br. at p. 15. In fact, ALJ Fein preceded his conclusion with a detailed assessment of Dr. Bianco's records, and catalogued the doctor's findings from his August 1, 2022, evaluation of Plaintiff, and his August 17, 2022, medical source statement. Tr. at pp. 24–25, 27. Specifically, ALJ Fein first considered how Dr. Bianco examined the Plaintiff on August 1, and noted that the doctor assessed Plaintiff's gait, station, and bilateral lower extremities. Tr. at pp. 24–25. ALJ Fein then explained that Dr. Bianco deduced from these assessments that Plaintiff "has moderate to moderately severe bilateral lateral recess stenosis at L4-L5 and severe left

foraminal stenosis at L5-S1 and chronic left L5- and S1 radiculopathies," but that Plaintiff's SI joints, gait, station, and bilateral lower extremities appeared normal, and that she did not have ankylosing spondylitis. Tr. at pp. 24–25. Notably, Dr. Bianco "stated that [Plaintiff] could increase her activities as tolerated." *Id.* at p. 25.

ALJ Fein subsequently considered Dr. Bianco's medical source statement—completed sixteen days after the doctor examined Plaintiff, on August 17, 2022—which strayed from his own objective clinical findings, and thus led the ALJ to determine Dr. Bianco's opinion was "only somewhat persuasive." Tr. at p. 27. Specifically, ALJ Fein noted substantial restrictions on Plaintiff's mobility and exertional limitations contained in Dr. Bianco's medical source statement, including that she

> can rarely lift and carry ten pounds in a competitive work situation. She can rarely twist, stoop/bend, crouch/squat, climb stairs and never climb ladders. She can occasionally look down, turn head right or left and look up. She can rarely hold her head in a static position. She can occasionally use her bilateral upper extremities to grasp, turn and twist objects with her hands, use fingers for fine manipulation and arms for reaching, including overhead.

Tr. at p. 27.

Although the ALJ did not literally state that Dr. Bianco's objective clinical findings did not support this later medical source statement, he deemed the doctor's opinion only somewhat persuasive "because it is not consistent with the objective clinical findings that he reported during his physical examinations, including this most recent examination on August 1, 2022." *Id.* While Plaintiff contends this statement was inappropriately conclusory, ALJ Fein's preceding analysis shows that he correctly

13

confined his inquiry to Dr. Bianco's own records to show how the doctor failed to support his subsequent medical source statement. Tr. at pp. 24–25, 27. This accounting clearly established that Dr. Bianco's own objective clinical findings did not support his medical source statement, and thereby satisfies the ALJ's obligation to analyze the supportability factor. Tr. at p. 27.

Where ALJ Fein errs, however, is in his consistency analysis. Tr. at p. 27. Plaintiff again cites to ALJ Fein's "persuasiveness rationale" to argue that the decision inadequately analyzes the consistency of Dr. Bianco's medical opinion under 20 C.F.R. § 404.1520c(b)(2). *Id.* ALJ Fein correctly deemed Dr. Bianco's objective clinical findings inconsistent with his medical source statement. *Id.* However, the ALJ failed to adequately explain *why* Dr. Bianco's was inconsistent with the other medical opinions of record. *Id.* Instead, the ALJ conclusively stated that the doctor's "opinion is also inconsistent with the objective clinical findings of the physical examinations reported by Mike Sun, MD on March 21, 2022, and Lynn McIlvain, PA on June 15, 2022." *Id.* Here, the ALJ does not establish a logical bridge between Dr. Bianco's medical source statement and what he considers other, inconsistent medical professionals' opinions. *Id.* Instead, ALJ Fein requires the court to guess from the preceding analysis how these three opinions differ. Tr. at pp. 24–27. This is a procedural error subject to a harmless error analysis. *See, e.g.*, *Schillo v. Saul*, 31 F.4th 64, 75 (2d Cir. 2022).

### 3. *Harmless Error*

Error is harmless where proper analysis would not have altered the ALJ's conclusion and "a searching review of the record assures [the court] that the substance of the [regulation] was not traversed." *Scott A.C. v. Kijakazi*, 2022 U.S. Dist. LEXIS 133082, at *6 (N.D.N.Y. July 27, 2022) (quoting *Loucks v. Kijakazi*, 2022 U.S. App. LEXIS 16829, at *4 (2d Cir. 2022)). However, an ALJ commits reversable error when their decision "fail[s] to assess and articulate" medical opinions of record. *Johnathan W. v. Saul*, 2021 U.S. Dist. LEXIS 57537, at *28 (N.D.N.Y. Mar. 26, 2021). Remand is typically required if the ALJ does not appropriately "explain the supportability or consistency factors." *Rivera v. Comm'r of Soc. Sec.*, 2020 U.S. Dist. LEXIS 245361, at *14 (S.D.N.Y. Dec. 30, 2020) (quoting *Andrew G. v. Comm'r of Soc. Sec.*, 2020 U.S. Dist. LEXIS 182212, at *5 (N.D.N.Y. Oct. 1, 2020)) (internal quotation marks omitted); *see also Jennifer G. v. Comm'r of Soc. Sec.*, 2023 U.S. Dist. LEXIS 218445, at *26 (N.D.N.Y. Sept. 6, 2023) (remanding where the ALJ failed to "meaningfully discuss" the consistency of the medical opinions).

Remand is required as ALJ Fein's error is not harmless. Because ALJ Fein did not adequately analyze Dr. Bianco's medical source statement for consistency, this Court cannot say with certainty that a proper analysis would have confirmed the ALJ's conclusion. Tr. at pp. 24–27; *see Scott A.C. v. Kijakazi*, 2022 U.S. Dist. LEXIS 133082, at *6 (N.D.N.Y. July 27, 2022). Insofar as 20 C.F.R. 404.1520c(b)(2) requires an ALJ to "explain the supportability or consistency factors," an ALJ's failure to "meaningfully

15

discuss" either one renders their decision procedurally improper and worthy of remand. *Rivera v. Comm'r of Soc. Sec.*, 2020 U.S. Dist. LEXIS 245361, at *14 (S.D.N.Y. Dec. 30, 2020); *see Jennifer G. v. Comm'r of Soc. Sec.*, 2023 U.S. Dist. LEXIS 218445, at *26 (N.D.N.Y. Sept. 6, 2023). ALJ Fein summarized PA McIlvain and Dr. Sun's objective clinical findings prior to discussing the substance of Dr. Bianco's medical source statement. Tr. at pp. 24–27. He then stated broadly that, "[Dr. Bianco's] opinion is also inconsistent with the objective clinical findings of the physical examinations reported by Mike Sun, MD on March 21, 2022 and Lynn McIlvain, PA on June 15, 2022." Tr. at p. 27. In drawing this conclusion, ALJ Fein made no effort to explain *why* Dr. Bianco's medical source statement and Dr. Sun and PA McIlvain's objective clinical findings were inconsistent with one another. *Id.* This Court cannot determine whether a proper analysis would have altered ALJ Fein's conclusion, nor can it state with confidence that assessing the whole record would establish that the ALJ did not traverse the substance of the regulation. *Scott A.C. v. Kijakazi*, 2022 U.S. Dist. LEXIS 133082, at *6 (N.D.N.Y. July 27, 2022) (quoting *Loucks v. Kijakazi*, 2022 U.S. App. LEXIS 16829, at *4 (2d Cir. 2022)). As such, ALJ Fein's error is clearly not harmless, and this case must be remanded pursuant to sentence four of 42 U.S.C. § 405(g).

## IV. CONCLUSION

**ACCORDINGLY**, it is

**RECOMMENDED**, that Plaintiff's Motion for Judgment on the Pleadings be **GRANTED**; and it is further

**RECOMMENDED**, that Defendant's Motion for Judgment on the Pleadings be **DENIED**; and it is further

**RECOMMENDED**, that Defendant's decision denying Plaintiff disability benefits be **REMANDED** pursuant to sentence four; and it is

**ORDERED,** that the Clerk of the Court shall serve copies of this Report-Recommendation and Order on the parties.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Hum. Servs.*, 892 F.2d 15, 16 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Dated: April 15, 2024
       Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge